NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GEORGE W. ANDREWS, JULIUS BASSIE, SOLOMAN FORKAY, ROGER MONTOYA, JORGE SANTOS, and EDENS ANDRE, individually and on behalf of themselves and all others similarly situated, | : : : : : : : : : | |
| Plaintiffs, | : : | **Hon. Dennis M. Cavanaugh** |
| v. | : : | **OPINION** |
| THE HOME DEPOT, INC., | : : : | Civil Action No. 03-CV-5200 (DMC) |
| Defendant. | : : : | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon motion by The Home Depot, Inc. ("Defendant") to dismiss the complaint of Plaintiffs George W. Andrews, Julius Bassie, Solomon Forkay, Roger Montoya, Jorge Santos and Edens Andre (collectively, "Plaintiffs"). Plaintiffs, on behalf of themselves and all other similarly situated, bring a claim under 42 U.S.C. § 1981 alleging that they suffered discrimination as a result of their "foreign birth."

On June 8, 2009, Defendant moved to dismiss for failure to state a claim pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). For the reasons stated below, Defendant's motion is **granted**.

## I. **BACKGROUND**

The Court accepts the factual allegations in Plaintiffs' Amended Complaint as true for purposes of this motion. Plaintiffs are individuals employed as laborers by Defendant in several distribution centers in the State of New Jersey. See Amended Complaint ("Am. Compl.") ¶ 1. Plaintiffs assert claims of discrimination on the basis of their place of birth under 42 U.S.C. §1981 and N.J.S.A. 10:5-12(a). Plaintiffs seek compensatory and punitive damages, as well as a variety of injunctive relief. Id. ¶ 41.

Plaintiffs bring this action "on their behalf and on behalf of all other similarly situated, namely, foreign-born laborers and foreign-born non-supervisor workers who are, have been or will be employed at any time within the State of New Jersey in distribution centers operated by Home Depot." Id. ¶ 2.[1] The plaintiffs and putative class members identify themselves as a disfavored class of "foreign born" workers in comparison to their "native born" counterparts. They allege a pattern and practice of:

(1)   withholding from class members training which is made available to native born comparators

(2)   paying class members less than individuals engaged in the same work who are native-born

(3)   withholding promotion and promotion opportunities from class members

(4)   subjecting the members of the class to work conditions and work quotas more rigorous than . . . [those of the] native born comparators.

(5)   subjecting the members of the class to a hostile workplace by virtue of their being foreign born

See id. ¶ 3(A)-(E).

On June 8, 2009, Defendant filed this motion to dismiss for failure to state a claim.

---

[1] Five other plaintiffs have voluntarily dismissed their claims with prejudice.

## II. <u>STANDARD OF REVIEW</u>

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975); <u>Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.</u>, 140 F.3d 478, 483 (3d Cir.1998).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 ( 1984).  In <u>Bell Atlantic Corp. v. Twombly</u> the Supreme Court clarified the Rule 12(b)(6) standard.  ___ U.S. ___, 127 S.Ct. 1955 (2007).  Specifically, the Court "retired" the language contained in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  <u>Twombly</u>, at 1968 (citing <u>Conley</u>, 355 U.S. at 45-46).  Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  <u>Id.</u> at 1965.

Ultimately, the question is whether the claimant can prove a set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. <u>Semerenko v. Cendant Corp.</u>, 223 F.3d 165, 173 (3d Cir. 2000).

## III. <u>DISCUSSION</u>

Defendant moves to dismiss Plaintiffs' claim pursuant to FED. R. CIV. PRO. 12(b)(6). Defendant contends that **(A)** § 1981 does not recognize a cause of action for discrimination based on a plaintiff's place of birth; and **(B)** Plaintiffs have failed to state a claim for discrimination based

on alienage.

Plaintiffs respond that, although § 1981 initially did not cover claims of discrimination based on place of birth, the CIVIL RIGHTS ACT OF 1991 amended § 1981, and now such claims are recognized. Additionally, Plaintiffs argue that they have sufficiently stated a claim for discrimination based on alienage (i.e., citizenship status) under § 1981.

For the reasons stated below, this Court finds that Plaintiffs have failed to state a claim for discrimination under § 1981.

**A.   APPLICABLE LAW**

It is established that 42 U.S.C. § 1981 prohibits discrimination based on race in the making and enforcement of contracts. See Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 459 (1975). Section 1981 provides:

§ 1981.  Equal rights under the law

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.[2]

Section 1981's prohibition against racial discrimination encompasses discrimination based on ancestry or ethnic characteristics.  See Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987); Magana v. Northern Mariana Islands, 107 F.3d 1436, 1446-47 (9th Cir. 1997); Von Zuckerstein v. Argonne Nat'l Lab., 984 F.2d 1467, 1472 (7th Cir. 1993).

As another District Court in this Circuit has noted, "[t]he Third Circuit itself has not directly addressed the issue of whether a claim based solely on nation origin can be maintained under 1981." Funayama v. Nichia Am. Corp., 2009 U.S. Dist. LEXIS 43765, at 12-13 (E.D. Pa. May 20, 2009). The majority of courts, however, have determined that § 1981 does not apply to claims based on national origin. Id., at 12-13 (collecting cases); see also Bahar v. Northwestern Human Servs., 2007 U.S. Dist. LEXIS 6372, at *16-18 (E.D. Pa. Jan. 29, 2007) (same); Chandoke v. Anheuser-Busch, Inc., 843 F. Supp. 16, 19 (D.N.J. 1994) (indicating that a 1981 claim would have been dismissed absent allegations of racial discrimination in additional to discrimination based on national origin); Ohemeng v. Del. State Coll., 676 F. Supp. 65, 68-69 (D. Del. 1988).[3]  The Third Circuit has noted, albeit in dicta, that "a claim based solely on national origin would be an insufficient basis for § 1981 claim under Al-Khazraji." Bennun v. Rutgers State University, 941 F.2d 154, 172 (3rd Cir. 1991); see Bahar, 2007 U.S. Dist. LEXIS 6372, at *16-17.

_____

[2] Subsections (b) and (c) were added to § 1981 pursuant to the CIVIL RIGHTS ACT OF 1991, Pub. L. 102-166, 105 Stat. 1072.

[3] A number of other Circuits have arrived at the same conclusion.  See, e.g., Nedeltchev v. Sheraton St. Louis City Ctr. Hotel & Suites, 335 Fed. Appx. 656, 658 (8th Cir. Mo. 2009); Pourghoraishi v. Flying J., Inc., 449 F.3d 751, 756 (7th Cir. 2006); Leon v. Fed. Res. Bank of Chicago, 823 F.2d 928, 931 (6th Cir. 1987).

B.   ANALYSIS

1.   Discrimination Based on "Foreign Birth"

This action is based upon Plaintiffs' allegation that they were subjected to discrimination as a result of their foreign birth.

Defendant argues, and Plaintiffs do not dispute, that the case of Saint Francis College v. Al-Khazari, 481 U.S. 604 (1987), interpreted § 1981 to cover racial/ethnic discrimination, but not discrimination purely based on place of birth.  See Pl. Br. at 10.  Plaintiffs, however, assert that Al-Khazari was superceded by THE CIVIL RIGHTS ACT OF 1991, Pub. L. 102-166, 105 Stat. 1072 ("THE CIVIL RIGHTS ACT" or "the ACT").  Plaintiffs argue, then, that the scope of § 1981 is more broad than as construed by the Al-Khazari Court.  They argue that § 1981 now covers claims based upon place of birth.  This Court cannot agree.

While THE CIVIL RIGHTS ACT OF 1991 increased the coverage of § 1981, it did not expand the provision to cover claims based on foreign birth.  The modifications of the ACT were indeed intended to overrule/codify several Supreme Court decisions.  See Arendale v. City of Memphis, 519 F.3d 587, 598 (6th Cir. Tenn. 2008).  In so doing, "The Civil Rights Act of 1991 names several Supreme Court decisions in both its text and legislative history which the act is intended to overrule."  Arendale, 519 F.3d at 598 n.8.  The text and legislative history did not, however, suggest that the ACT was intended to overrule Al-Khazari.  In fact, the legislative history of the statute indicates that Congress viewed the Al-Khazari holding favorably.  The Committee Report reads:

> In order to resolve any confusion among the courts regarding application of Section 1981 to national origin groups, the Committee offers this clarification.
>
> The Committee affirms the holding in Saint Francis College v. Al-Khazraji, 481 U.S. 604 (1987), "that Congress intended to protect from discrimination identifiable

> classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.  Such discrimination is racial discrimination that Congress intended (Section) 1981 to forbid . . . "

H.R. Rep. No. 102-40(II), at 36-37 (1991).  If the CIVIL RIGHTS ACT modified or overruled the Al-Khazari holding, the legislative history would have so indicated, as it did with respect to the other Supreme Court decisions that the ACT was intended to address.[4]

Plaintiffs point to another portion of the legislative history to support their argument that a claim for discrimination based on place of birth is actionable under § 1981.  They quote the Committee Report, which in relevant part, reads:

> The Supreme Court has long recognized and the Committee agrees that "nation origin" is synonymous with "ancestry."  Thus, for the purpose of pleading under Section 1981, it is sufficient to allege discrimination based upon national origin; such as an assertion will state a valid cause of action under this statute.

Id.  This Court does not agree that the passage evidences Congressional intent to recognize a cause of action based exclusively on foreign birth.  First, as noted above, the Committee Report explicitly states that Al-Khazari is affirmed.  Second, the portion cited by Plaintiffs states that "national origin" is synonymous with "ancestry."  The Committee, therefore, was using the term "national origin" broadly to mean "the country from which [one's] ancestors came," see Al-Khazari, 481 U.S. 614 (J. Brennan, concurring), as opposed to the more specific meaning urged by Plaintiffs (i.e., a **particular individual's** place of birth).  See id.  Here, Plaintiffs' claim is not based on ancestry–it is explicitly based on the more narrow construction of national origin, i.e., place of birth.   Accordingly, the cropped quotation that Plaintiffs cite does not indicate to this Court that the CIVIL RIGHTS ACT was

---

[4] For instance, the legislative history indicates that § 1981(b) and (c) were intended to overrule Patterson v. McLean Credit Union, 491 U.S. 164 (1989) and to codify Runyon v. McCrary, 427 U.S. 160 (1976).  See Arendale, 519 F.3d at 598-99.

intended to overrule the holding in <u>Al-Khazari</u> to permit place of birth claims to proceed under § 1981.

The Court recognizes that the distinction between ancestry and "national origin" and/or "place of birth" is often a fine one.  However, Courts in this Circuit addressing § 1981 claims based exclusively on foreign birth–including those decided after the passage of the CIVIL RIGHTS ACT of 1991–have rejected the interpretation asserted by Plaintiffs.  See <u>Funayama</u>, 2009 U.S. Dist. LEXIS 43765, at 12-13; <u>Bahar</u>, 2007 U.S. Dist. LEXIS 6372, at *17-20; <u>Chandoke v. Anheuser-Busch, Inc.</u>, 843 F. Supp. at 19 (D.N.J. 1994).[5]  In fact, Plaintiffs do not cite a single case in support of their position.  The case law overwhelming supports Defendant's assertion that "foreign birth" claims are not recognized.[6]  Plaintiffs urge that the Court disregard these cases as failing to sufficiently take into account the legislative history.  For the reasons stated above, this Court declines to do so.

Plaintiffs' discrimination claim based exclusively on the fact of their foreign birth is not cognizable under § 1981.

_____

[5] Several of the circuit courts are in accord on this point.  See <u>Tippie v. Spacelabs Med., Inc.</u>, 180 Fed. Appx. 51, 56 (11th Cir. 2006); <u>Von Zuckerstein</u>, 984 F.2d at 1472; <u>Manatt v. Bank of Am.</u>, 339 F.3d 792, 798 (9th Cir. Or. 2003) (allowing 1981 claims to proceed because they were based on race and not national origin); <u>Amini v. Oberlin College</u>, 259 F.3d 493, 502 (6th Cir. Ohio 2001).

[6] In the instances where national origin claims have been recognized, it is because the plaintiffs' claims are based on racial aspects of national origin–not simply the plaintiff's place of birth.  <u>See, e.g.</u>, <u>Manatt</u>, 339 F.3d at 798 (permitting plaintiff's § 1981 claim to proceed because it was not based exclusively on national origin; noting that she alleged that "her coworkers pulled their eyelids to imitate or mock those of the Asian race[, and e]ye shape has nothing to do with national origin."); <u>Wesley v. Howard Univ.</u>, 3 F. Supp. 2d 1, 3 (D.D.C. 1998) (noting that national origin discrimination is cognizable under § 1981 only when "based on racial or ethnic characteristics associated with the national origin in question").  Here, in only two instances in the complaint did Plaintiffs even refer to race, and in both instances it was just in passing.  <u>See</u> Am. Comp. ¶¶ 31, 35.  It is entirely clear that the class of plaintiffs consists of "foreign-born" workers.

-8-

2. <u>Discrimination Based on Alienage</u>

Although Plaintiffs quite clearly bring their discrimination claims on the basis of their foreign birth, in response to this motion to dismiss, they now seek to maintain claims for alienage-based discrimination. The Court will not permit Plaintiffs to modify their Amended Complaint by raising new theories in their opposition to Defendant's motion to dismiss.

In considering a motion to dismiss, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994); <u>Penn. ex rel. Zimmerman v. Pepsico, Inc.</u>, 836 F.2d 173, 181 (3d Cir. Pa. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Throughout the Amended Complaint, Plaintiffs consistently state that their claim is premised upon discrimination as a result of their foreign birth. <u>See</u> <u>Am. Comp.</u> ¶¶ 2, 3, 19, 21, 24, 26, 31, 32, 34-37, 41. The complaint does not even mention alienage or citizenship.[7] Furthermore, at a case management conference held just prior to this motion, counsel once again confirmed that the class of plaintiffs consisted of foreign-born workers.[8] Plaintiffs cannot now argue that their consistent assertions of discrimination based on foreign birth are equivalent to claims based on alienage.

─────────────────────

[7] Nor do the allegations in the complaint implicitly form the basis for an alienage claim. As acknowledged in <u>Anderson v. Conboy</u>, a case on which Plaintiffs heavily rely, "[a]lienage discrimination is distinct from both national-origin and birthplace discrimination." 156 F.3d 167, 171 n.5 (2d Cir. N.Y. 1998).

[8] <u>See</u> Defendant's Declaration in Support of its Motion to Dismiss, at Ex. E (referring to the class as a "class of foreign-borne employees"). Such statements are properly considered by the Court on a 12(b)(6) motion. <u>See</u> 5A C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1364, at 475-81 (1990).

Plaintiffs have failed to plead facts sufficient to maintain a claim for discrimination based upon their alienage or citizenship status under § 1981.

## IV.  CONCLUSION

For the reasons stated above, Defendant's motion to dismiss Plaintiffs' § 1981 claim pursuant to FED. R. CIV. P. 12(b)(6) is **granted.**  The Court declines to exercise jurisdiction over Plaintiffs' state law claim.[9]

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          January   26   , 2009
Original:      Clerk's Office
cc:            All Counsel of Record
               The Honorable Mark Falk, U.S.M.J.
               File

---

[9] Although the Court may exercise  jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367, declining supplemental jurisdiction after all federal claims are dismissed is appropriate where there is neither apparent unfairness nor any over-riding judicial interest.  See Figueroa v. Buccaneer Hotel, 188 F.3d 172, 181 (3d Cir. 1999); 28 U.S.C. § 1367(c)(3).